## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

YUSEF ALI, Administrator of                                                          PLAINTIFF
the Estate of Marshall Marbly, Deceased

V.                                                                        NO. 3:03CV-427-R

CITY OF LOUISVILLE, et al.                                                        DEFENDANTS

### MEMORANDUM OPINION

On October 20, 2005, the court entered a memorandum opinion and order that dismissed several of plaintiff's claims in this action, without specific enumeration. Plaintiff promptly asked the court, pursuant to Fed. R. Civ. P. 59(e), to amend and clarify its judgment. The court has given the plaintiff's motion, and all responses thereto, extensive and thorough consideration. After much reflection and deliberation, the court will amend its prior memorandum opinion and order to (1) clarify which claims reasonably can be ascertained from plaintiff's complaints and responses to the defendants' motion for summary judgment, and (2) issue a ruling on each specific claim.

**I.**

Although the events that gave rise to this lawsuit have been described at some length in past pleadings, a brief summary is worthy of repetition. The uncontested facts are as follows. On August 22, 2002, police officers from the City of Louisville were summoned to 28th Street and Garland Avenue, where Marshall Marbly, a mentally-ill homeless man, was causing a disturbance in front of a gathering crowd. The first officer to arrive at the scene called for backup, and seven additional officers responded. As the disturbance escalated, Mr. Marbly

locked himself inside his nearby car. In an attempt to force Mr. Marbly to leave his car, the police fired rounds of pepper balls inside the vehicle. When that strategy was not successful, the police sprayed Mr. Marbly with OC spray, and then fired bean bag rounds at him. The disturbance escalated further when one of the officers shouted "gun!" and ended when two officers fired their weapons at Mr. Marbly. Although the officers wounded Mr. Marbly with their gunshots, the police did not allow EMS to approach the car until the SWAT team arrived and determined it was safe for EMS to do so. The gunshot wounds Mr. Marbly received did not kill him immediately, but they were nonetheless fatal. Mr. Marbly bled to death before EMS was allowed to remove him from the car.

About almost all other details – *e.g.*, the sequence of events, whether each distinct type of force used by the officers was appropriate under the circumstances, whether Mr. Marbly provoked the use of deadly force in any way, the length of time he remained untreated after being shot – the parties disagree. The parties also disagree about which claims plaintiff has alleged in his original and amended complaints and about whether this court's treatment of those claims in response to the defendants' motion for summary judgment was correct as a matter of law.

Although the facts are the facts, the witnesses' memories of the events in question cannot entirely be reconciled. Thus, where there exist material differences, which version of the facts ultimately should be accepted as true is for the jury to decide. Whether plaintiff's claims survive as a matter of law, even if his version of the facts is accepted as true, is for the court to decide, however. What is more, there exists the additional issue of what claims, precisely, can reasonably be ascertained from the face of plaintiff's complaints and other pleadings. That, too, is the province of this court and, in hindsight, should have been addressed in the court's recent

memorandum opinion and order.

## II.

The court's opinion and order states:

> [Defendants'] Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The excessive force claims against Officers Hanifen and Atkins for using non-deadly force, and against Sgt. Johnson for supervising while the officers used non-deadly force remain. All other claims are dismissed.

Plaintiff does not entirely disagree with the court's ruling. He only asserts that the court improperly dismissed some of the "other claims." In response, defendants assert that plaintiff never identified some of the "other claims" until he filed his motion for reconsideration. After careful review of the complaints, the motion for summary judgment, and the motion for reconsideration, the court has determined that it should have untied rather than cut the Gordian knot of plaintiff's imprecisely-pled complaints. The court will therefore amend its prior judgment to delineate more clearly which claims were presented by plaintiff in his complaints, or tried by the express or implied consent of the parties, and will specifically rule on each claim. This is no easy task because plaintiff's complaints stretch, and may even exceed, the liberal bounds of "notice pleading" permitted in federal court. *See, e.g, Equal Employment Opportunity Comm'n v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir. 2001)(even under the liberal notice-pleading regime, a complaint must still give the defendant fair notice of the claim and its supporting facts). The court will therefore first determine which claims are readily apparent from plaintiff's complaints, by liberally (but not unreasonably – fair notice of claims is still required) construing them as necessary. The court will then determine whether any additional claims have been presented or existing vague claims clarified because they have been tried by express or implied consent of the parties. Last, the court will amend and clarify its prior order

and issue a ruling on each claim.

**A.      Claims Arguably Presented in Plaintiff's Original and First Amended Complaints**

Plaintiff originally filed two separate complaints in this action – one against the City of Louisville and its successor, the Louisville/Jefferson County Metropolitan Government ("Metro Government")(referred to herein as "Complaint 1"), and the other against four police officers (referred to herein as "Complaint 2"). Those cases were later consolidated by order of this court and, shortly thereafter, plaintiff filed his first amended complaint against all of the defendants.[1] Plaintiff's recitation of the facts that purport to form the basis of his claims consists of the following statements: that the municipal defendants individually (in the case of the officers) or acting through others (in the case of the municipalities) "shot and assaulted and killed" Mr. Marbly, causing him to "suffer severe and grievous physical injuries which were the substantial cause of his death," and that the municipal defendants failed to properly train their officers on how to deal with mentally ill persons.[2]   Although plaintiff restates these core facts at various places in his complaint, he provides no additional material detail to flesh them out.

As for plaintiff's legal claims, his original complaints are almost inaccessibly vague, and disregard the requirements of FED. R. CIV. P. 8(e)("each averment of a pleading shall be simple, concise, and *direct*)(emphasis added) and FED. R. CIV. P. 10(b)(requiring claims to be stated in separate counts "whenever a separation facilitates the *clear presentation* of the matters set forth")(emphasis added). The purported state law claims, are presented as follows:

> The actions of the Defendants, jointly and severally, were
> negligent and/or careless and/or grossly negligent and/or grossly

---

[1] Plaintiff has also filed a second amended complaint, which is the subject of a motion to dismiss. In a separate memorandum opinion and order, the court has evaluated whether that motion should be granted, and determined that it shall not.

[2] Complaint 1, ¶¶ 7, 9; Complaint 2, ¶ 6.

> careless and/or were performed with oppression and/or malice
> and/or with a reckless disregard for the safety of Plaintiff's
> Decedent, Marshall Marbly, and such actions and/or omissions
> independently and/or concurrently, were a substantial cause of the
> injuries and death of Plaintiff's Decedent, Marshall Marbly.[3]

A clear and direct presentation of claims this is not. Although Plaintiff blends several legal and lay terms (*e.g.,* negligence, gross negligence, gross carelessness, assault, recklessness), he does not add any greater factual specificity to support these terms, other than the brief factual summary described above.

There are no enumerated counts, and the only "claims" that are arguably apparent from the face of the complaint are those for assault and negligence and, with respect to the municipalities, a failure-to-train claim.[4] Plaintiff does not clarify his negligence claim by specifically identifying any statutory or other duty the defendants allegedly breached, however. Nor does he elaborate on the precise nature of the failure-to-train claim (*e.g.,* failure to train in the proper use of force when making an arrest) against the City. In addition, there is no mention of an alleged violation of 42 U.S.C. § 1983 in either of the original complaints, although one reasonably can be inferred, because plaintiff alleges that officers were "acting under color of state law" when they unreasonably seized Mr. Marbly, thereby depriving him of his rights secured by "the Fourth and Fourteenth Amendments."[5] It is unclear, however, whether plaintiff intended to state that Mr. Marbly was deprived of his rights under the Fourth Amendment, as made applicable to the states by the Fourteenth Amendment, or whether he intended to allege that Mr. Marbly's substantive due process rights had been violated. He does not state whether the officers are being sued in their individual, or official, capacities, or both. He does allege that

---

[3] Complaint 1, ¶ 8; Complaint 2 ¶ 7.
[4] Complaint 1, ¶¶ 8-10; Complaint 2, ¶¶ 6-8.
[5] Complaint 1, ¶¶ 6, 10; Complaint 2, ¶¶ 5, 8.

the municipal defendants are "directly or indirectly responsible" for the actions or omissions of the officers, who were acting within the course and scope of their employment, thereby arguably presenting a claim for vicarious liability.[6] Yet, other than the statement that the officers "shot and assaulted[7] and killed" Mr. Marbly, causing him to "suffer severe and grievous physical injuries [that] were the substantial cause of his death," plaintiff does not add any meaningful additional factual specificity to his claim.[8]

Plaintiff's post-consolidation, first amended complaint attempts compliance with FED. R. CIV. P. 10, but still relies heavily on notice pleading. In his first amended complaint, plaintiff incorporates by reference the allegations in his original complaints and makes four enumerated "claims" (counts I - IV). Count I alleges a new claim, a putative violation of the Americans with Disabilities Act (the "ADA"), a federal claim.[9] Count II is stated too vaguely to be considered an actual cause of action. He states, "[t]he actions of Defendants ... were in violation of the Plaintiff's Decedent's rights and privileges, as guaranteed him by the State and Federal Constitutions, and other relevant State and Federal Laws, statutes, regulations ...."[10] Count III alleges the state law claim of outrageous conduct (known more precisely in Kentucky as the "intentional infliction of emotional distress").[11] Count IV alleges that the defendants failed "to allow and/or provide proper medical care" by waiting "over 45 minutes before allowing the EMS

---

[6]Complaint 1, ¶¶ 6-10.

[7]Although the court will infer a claim of battery from this statement, it notes that assault and battery are two distinct and independent legal claims. Although the police arguably may have assaulted Mr. Marbly, by causing him to be apprehensive about imminent physical harm, what plaintiff chiefly complains of is the alleged lethal and non-lethal battery.

[8]Complaint 1, ¶ 7

[9]First Amended Complaint, ¶¶ 4-14.

[10]First Amended Complaint, ¶¶ 15-16.

[11]First Amended Complaint, ¶¶ 17-18.

-6-

personnel to remove him from the car," which was a "substantial factor" in causing his death.[12] Plaintiff asserts that these actions were "in violation of Plaintiff's Decedent's rights guaranteed him by State and Federal Constitutions, laws, rules and statutes" without identifying with any specificity which constitutional provisions, laws, or rules allegedly were violated.[13] Thus, the only two claims clearly stated as enumerated counts are: (1) an alleged violation of the ADA (count I) and (2) an alleged commission of intentional infliction of emotional distress (count III). A § 1983 claim of deliberate indifference to Mr. Marbly's medical needs reasonably can be inferred from count IV, however.

Plaintiff also incorporates all prior allegations and putative claims by reference, and therefore arguably includes, without specific mention, the claims of assault and vicarious liability of the municipal defendants for the "actions and/or omissions" of the officers.[14] He does clarify his claim of negligence, somewhat, as a claim against the City for failure to train its police officers to deal with the mentally ill, but the words "failure to train" are used in the recitals section[15] and appear to be a mere predicate to a discussion of the City's alleged liability for its failure to comply with the requirements of the ADA, not a separate state-law claim of negligent failure to train. Plaintiff does not state whether the officers negligently performed any specific duty, other than perhaps the alleged duty to provide Mr. Marbly with medical care, as stated in count IV.

Plaintiff does state for the first time in the recitals section of the first amended complaint that the case is a "damages action under 42 U.S.C. § 1983" for the alleged unreasonable seizure

---

[12]First Amended Complaint, ¶¶ 19-21.

[13]First Amended Complaint, ¶ 20.

[14]First Amended Complaint, ¶¶ 1, 4, 15, 17, 19.

[15]First Amended Complaint, ¶ 2.

in violation of the "Fourth and Fourteenth Amendments," and provides greater specificity to his failure-to-train claim by asserting that "the City of Louisville was deliberately indifferent to the need to train police officers to deal with mentally ill citizens."[16] Plaintiff also includes a paragraph that, although vaguely worded, can only be reasonably interpreted as stating that the officers are being sued solely in their individual capacities, not also in their official capacities.[17] There are nebulous references in the recitals section to the lawsuit being a "damages action under ... state law" and the defendants' alleged intentional acts which violated Mr. Marbly's rights under tort law, but plaintiff does not attempt even generally to link the alleged actions to any particular violation of state law, leaving that to be inferred by the defendants and the court.[18]

In summary, the putative claims that can be divined from plaintiff's original and first amended complaints are:

**Federal Claims**

1. 42 U.S.C. § 1983 – excessive force

    a. against municipal defendants

    b. against officers in their individual capacities

2. 42 U.S.C. § 1983 – failure to provide medical care

    a. against municipal defendants

    b. against officers in their individual capacities

3. Violation of the Americans with Disabilities Act

    a. municipal liability only

---

[16] First Amended Complaint, ¶ 2.
[17] First Amended Complaint, ¶ 3.
[18] First Amended Complaint, ¶ 2.

**State Claims**

    1.    Negligent use of excessive force

        a.    individual liability of officers

        b.    vicarious liability of municipal defendants

    2.    Negligent failure to train (municipal defendants only)

    3.    Assault

        a.    individual liability of officers

        b.    vicarious liability of municipal defendants

    5.    Battery

        a.    individual liability of officers

        b.    vicarious liability of municipal defendants

    6.    Intentional infliction of emotional distress

        a.    individual liability of officers

        b.    vicarious liability of municipal defendants

Given the imprecise wording and structure of the complaints, however, the court must also look to the defendants' motion for summary judgment, and all responses and replies thereto, to determine whether any claims were added, clarified, or abandoned by the plaintiff.

**B.**    **Claims Tried by the Express or Implied Consent of the Parties**

After the close of discovery, defendants filed a motion for summary judgment, in which they asked the court to dismiss all of plaintiff's claims, with prejudice, and framed their arguments in terms of the claims and related issues (*e.g.*, qualified immunity) as they understood them to be, adding specificity where it was lacking in plaintiff's complaints. Plaintiff responded to some of defendants' arguments; others, he simply ignored. In so doing, the parties framed

(expressly or impliedly) the claims presented. This is true because, pursuant to FED. R. CIV. P. 15(b), issues not raised by the pleadings may be tried by the express or implied consent of the parties and thereby treated as if they had been raised in the pleadings. (Because a narrative description of the arguments presented, and of all corresponding responses (if any) would be unduly lengthy, and possibly confusing, the court has summarized the parties' arguments in a chart attached hereto as Exhibit A.)

To the extent that plaintiff failed to identify any claims overlooked by the defendants' characterization, those claims are waived. Defendants clearly sought dismissal of *all* claims[19] and stated what they believed those claims to be. If they failed to identify any that plaintiff intended to include in his imprecisely-worded complaints, it was the plaintiff's job at that point to identify and preserve those claims, not the court's. Similarly, to the extent that plaintiff failed to present any argument in response to a particular issue, plaintiff has conceded the point. A district court is not required to search the record to determine whether genuine issues of material fact exist where a non-moving party has failed adequately to respond to a summary judgment motion. *See, e.g., Street v. J.C. Bradford & Co.*, 866 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the court may rely on the facts presented and designated by the moving party. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). It is the non-movant's, not the trial court's, obligation to present all of the non-movant's legal theories and to champion the non-movant's position. *Id.* at 405-07. Moreover, by the time discovery has ended and the court is asked to wrestle with the question of whether summary judgment of all claims is proper, the extent to which plaintiff can rely on any liberal interpretation of notice-pleading permitted by the Federal Rules of Civil Procedure, is limited. *See Tucker v. Union of Needletrades, Industrial,*

---

[19]*See* docket no. 20 (Mot. Summ. J., Mem. in Support of Mot. Summ. J. at 31, and Proposed Order).

*and Textile Employees*, 407 F.3d 784, 787-88 (6th Cir. 2005)(citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)).

Thus, at the conclusion of all briefing on defendants' motion for summary judgment, plaintiff waived the following claims and issues by failing to present any counter argument in his response or sur-reply, or to identify that a claim had been overlooked:

**Federal Claims and Issues**:

1. The issue of whether the officers could be sued in their official capacities;

2. Any intended claim under § 1983 that Mr. Marbly was deprived of substantive due process under the Fourteenth Amendment;

3. Any claims for municipal liability under § 1983 for the officers' alleged use of excessive force and for their failure to promptly provide Mr. Marbly with medical care;

**State Law Claims and Issues**:

a. Any claim for the negligent breach of a duty arising from any state laws, rules, or regulations other than the alleged negligent use of force;

b. The claim of assault;

c. The claim of intentional infliction of emotional distress; and

**Issues of Qualified Immunity for State Law Claims**:

The issue of whether Officer Atkins's and Officer Kaufling's decisions to use lethal force were discretionary acts.

Consequently, the court determines that only the following claims and issues, which either had been adequately presented in the complaints or tried by the express or implied consent of the parties, required the court's evaluation:

**Federal Claims**:

1. The officers' liability, in their individual capacities, under 42 U.S.C. § 1983, for their alleged use of excessive force in violation of Mr. Marbly's

-11-

>    rights under the Fourth Amendment to the United States Constitution;
>
> 2. The officers' liability, in their individual capacities, under 42 U.S.C. § 1983, for their alleged failure to provide Mr. Marbly with adequate medical care in violation of Mr. Marbly's constitutional rights[20];
>
> 3. Municipal liability under § 1983 for the City's failure to train its officers on how best to deal with the mentally ill;
>
> 4. Sgt. Johnson's supervisory liability under 42 U.S.C. § 1983 for the other officers' alleged use of excessive force in violation of Mr. Marbly's rights under the Fourth Amendment to the United States Constitution; and
>
> 5. The City of Louisville's alleged violation of the Americans with Disabilities Act for its failure to train its officers on how to deal with the mentally ill.

**State Law Claims**:

> The officers' individual liability for using force in excess of that permitted under Kentucky law.

**Qualified Immunity Issues with Respect to the Federal Claims**:

> 1. Whether the officers violated Mr. Marbly's rights under the Fourth Amendment when they used various types of force against him;
>
> 2. If so, whether his right to be free from the use of each particular type of force was clearly established;
>
> 3. If so, whether the officers' actions were objectively reasonable under the circumstances.

**Qualified Immunity Issues with Respect to the State Law Claims**:

> Whether the officers were performing discretionary or ministerial acts when they used escalating levels of non-lethal force against Mr. Marbly (plaintiff waived any argument that the use of lethal force was a discretionary act, *see* above).

---

[20]Which Amendment is not specified, although the Fourteenth Amendment can fairly be presumed because (a) plaintiff alleged Mr. Marbly had been deprived of his rights in violation of the Fourteenth Amendment, and (b) his status was most closely analogous to that of a pre-trial detainee, and the Fourteenth Amendment affords pre-trial detainees a right to adequate medical treatment that is analogous to prisoners' Eighth Amendment rights. *See Graha*m *v. County of Wastenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004).

In its October 20, 2005, opinion, the court determined that only plaintiff's § 1983 claims against Officers Atkins and Hanifen for the use of non-deadly excessive force in violation of the Fourth Amendment and his § 1983 claim against Sgt. Johnson for supervising while Officers Atkins and Hanifen used non-deadly force survived defendants' request for summary judgment. The court dismissed all other claims without specifying exactly what those claims were.

Because of the nebulous nature of the plaintiff's complaints, and because it was clear that the plaintiff had waived (intentionally or otherwise) some of his claims and arguments, the court concludes that it would have been better for all if it had identified not only the surviving claims in its memorandum opinion and order dated October 20, 2005, but had also identified specifically which claims would not survive, either because they had been waived or because they had been adjudicated on their merits. As the memorandum opinion and order now stands, one could fairly argue that the court simply did not explicitly address some of the plaintiff's claims and, admittedly, that makes the court's ruling uncertain. Accordingly, the court will clarify by amendment its prior ruling.

### III.

The court's memorandum opinion analyzes most of the plaintiff's claims identified above, but admittedly fails to clearly address: (1) whether the officers are liable under state law for negligently using excessive force; (2) whether the officers are entitled under federal law to qualified immunity from plaintiff's § 1983 claims; and (3) whether the officers are entitled to qualified immunity under state law for their use of non-lethal force.

The only two of the aforementioned issues addressed in plaintiff's Rule 59(e) motion, however, are the first and third. At the conclusion of his motion and in his proposed order, plaintiff asks the court to amend its prior judgment to:

-13-

1. Retain § 1983 claims against all defendants with respect to "any omissions asserted in the Complaint, including a failure to protect Plaintiff's decedent from the excessive force used by other police officers."

2. Clarify that the analysis of excessive force claims under § 1983 is different from the analysis of state law claims of negligent use of force, and retain state law negligence claims against all defendants pertaining to their use of force.

3. Clarify and definitively rule that the individual defendants were performing ministerial acts when they used force against Mr. Marbly and, therefore, are "not immune" in regard to any state law claims.

4. Clarify and definitively rule that the "City of Louisville n/k/a Louisville-Jefferson County Metro Government is vicariously liable for the claims that arise under Kentucky Law for the actions of its employees in the conduct of either discretionary or ministerial acts."

As the defendants correctly note in response, plaintiff's failure-to-protect claim under § 1983 is a new one that could not reasonably be inferred from the sparse facts alleged in plaintiff's complaints or from his imprecise statements of his putative claims in those complaints. Nor, for that matter, could any other "omissions," other than a failure to provide medical care, be reasonably inferred. Plaintiff's assertion that he clearly enunciated these "omissions,"[21] is incorrect. A fair reading of all of plaintiff's pleadings reveals that he did not articulate his putative failure-to-protect claim until after the court issued its summary judgment of all claims, and he has never specifically stated what the other legally-cognizable omissions were. To raise issues as putative claims for the first time in a motion pursuant to FED. R. CIV. P. 59(e) is impermissible. *See, e.g., Tucker,* 407 F.3d at 788.

With respect to plaintiff's request regarding the excessive force claims, the plaintiff is correct that the analysis of excessive force claims under § 1983 is different from the analysis under state law, but incorrect in his assertion that a police officer's use of excessive force can be

---

[21]Reply in Support of Mot. to Clarify (docket no. 61) at 4.

analyzed as a negligence claim. The use of excessive force by a police officer constitutes the intentional tort of battery. A police officer is privileged to use the amount of force that the officer reasonably believes is necessary to overcome resistance to his lawful authority, but no more. *See City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)(citing Ky. Rev. Stat. 431.025(3)(prohibiting unnecessary force, and impliedly permitting necessary force)). The officer is liable for the intentional tort of battery, not for negligence, when he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee. *See Gray*, 499 S.W.2d at 75.

There is no such thing as a negligent battery. *See* REST. (SECOND) TORTS § 13. Where the officer may have mistakenly believed that he needed to use the amount of force that he did, that does not change the fact that initial action was intentional, or alter the objective analysis of whether the force he ultimately used was excessive. Thus, where an unwanted touching (a battery), which is inherent in any arrest, escalates beyond that which is reasonably necessary into excessive force, the cause of action is solely for battery, with the officer's privileged use of force ending when the excessive force began. To permit a separate claim for negligence creates the risk that a jury would assume that, even if no excessive force were used, the officer might somehow still be liable for some undefined negligence. Such a result is doctrinally unsupportable and unacceptable, because each time an officer uses force, he commits an intentional act of battery for which he is liable, unless he is clothed by a privilege permitting him to use a reasonable amount of force (*e.g.*, that articulated in *Gray*, 499 S.W.2d at 74 (interpreting Ky Rev. Stat 431.025(3)), or Ky. Rev. Stat. 503.050, 503.070, 503.090).

Plaintiff also asks this court to clarify its ruling regarding the state law claims of excessive force in one other respect. Plaintiff asserts that the officers were performing

-15-

ministerial, not discretionary acts, when they used force against Mr. Marbly and, therefore, are not entitled to sovereign immunity for those claims. In Kentucky, qualified official immunity applies only to a public officer's *negligent* performance of discretionary acts. *Lamb v. Holmes*, 162 S.W.3d 902, 908 (Ky. 2005); *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). Regardless of whether the mechanics of the officers' use of force constituted discretionary or ministerial acts, to the extent that the force was beyond what was reasonably necessary, the officers' acts were *intentional* acts of battery, as discussed above. Therefore, this court need not characterize the officers' actions as either discretionary or ministerial for purposes of qualified official immunity.[22]

Last, the plaintiff asks the court to clarify the extent to which the City of Louisville (and its successor, Metro Government) is vicariously liable for the officers' use of excessive force. Defendants assert that this is a new theory, but it is not. *See* Complaint 1, ¶ 5 (alleging that the City was "indirectly responsible" for the acts of its officers) and First Amended Complaint, ¶ 1(incorporating prior allegations by reference). Regardless, defendants do not dispute that the City of Louisville would be vicariously liable, if the officers were found to have used excessive force in violation of state law, *see* Defendants' Resp. to Plaintiff's Motion to Clarify at 10-11 (docket no. 67), and vicarious liability is not a viable theory of recovery under 42 U.S.C. § 1983. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)(citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)).

---

[22]Plaintiff also asserts that collateral estoppel precluded any objection by the defendants to the characterization of the officers' acts as ministerial. *See* Supp. Mem. in Support of Plaintiff's Mot. to Amend/Clarify (docket no. 69). While it is true that non-mutual collateral estoppel it is permitted in Kentucky only when the party to be bound is the same party in the prior action,"*Moore v. Kentucky*, 954 S.W.2d 317, 319 (Ky. 1997) (citing *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970)), three of the officer defendants in this matter were not litigants in the case cited by plaintiff, *Hughes v. City of Louisville*, Civil Action No. 2003-CA-112-MR (Jefferson Cir. Ct., Feb. 27, 2004)). Officer Kaufling was, but in Kentucky one of the essential elements of "non-mutual collateral estoppel" is identity of issues, *Moore*, 954 S.W.2d at 319, which is not present here.

**IV.**

This case has become unnecessarily complicated for various reasons. To the extent that the court has contributed to any confusion or unnecessary complication, let that be remedied now. For the reasons stated herein, and in the court's memorandum opinion dated October 20, 2005, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

Plaintiff's claims pursuant to 42 U.S.C. § 1983 that Officers Atkins and Hanifen used excessive, non-lethal force against Mr. Marbly, in violation of his rights under the Fourth Amendment remain, as do their state law claims of assault against Officers Atkins and Hanifen for allegedly using excessive, non-lethal force.

Plaintiff's claim against Sgt. Johnson of supervisory liability under § 1983 for the use of non-lethal excessive force by Officers Atkins and Hanifen also remains.

Plaintiff's claims pursuant to § 1983 that Officers Atkins and Kaufling used deadly force in violation of Mr. Marbly's rights in violation of the Fourth Amendment are dismissed with prejudice.

Plaintiff's claim pursuant to § 1983 that the officers failed to provide Mr. Marbly with adequate medical care in violation of his constitutional rights is dismissed with prejudice.

Plaintiff's claim that the municipal defendants are liable pursuant to § 1983 for their alleged failure to properly train the City of Louisville's police officers on how best to deal with the mentally ill is dismissed with prejudice.

Plaintiff's claim that the City of Louisville violated the Americans with Disabilities Act is dismissed with prejudice.

Officers Atkins and Hanifen are not entitled to qualified official immunity for their alleged use of non-lethal excessive force in violation of § 1983. Nor are they entitled to qualified official immunity under state law for their alleged use of excessive force, because that constitutes an intentional tort under state law, and qualified immunity is warranted only for the *negligent* performance of discretionary acts by a public official.

To the extent that plaintiff asserted any additional claims, or raised any additional issues necessitating a ruling as part of the disposition of the summary judgment motion, those claims and issues were either waived or abandoned, and are thereby dismissed with prejudice.

The municipal defendants are dismissed from this action, as is Officer Kaufling.

The court will enter a separate order consistent with this memorandum opinion.

cc:     counsel of record